IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| DAVID LEE JACKSON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) CV 120-160 |
| | ) |
| JERMAINE WHITE, Warden, | ) |
| | ) |
| Respondent. | ) |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Petitioner, an inmate at Telfair State Prison in Helena, Georgia, brings the above-captioned petition pursuant to 28 U.S.C. § 2254. Having considered all the relevant pleadings, for the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Petitioner's § 2254 petition be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

**I.   BACKGROUND**

This case challenges the validity of Petitioner's conviction for malice murder, felony murder predicated on aggravated assault, aggravated assault, and possession of a knife during the commission of a felony. Jackson v. State, 831, S.E.2d 755, 757 (Ga. 2019); see also doc. no. 1, p. 1. A jury sitting in the Superior Court of Warren County, Georgia, found him guilty on all counts after a two-day trial conducted on October 3 and 4, 2016. Jackson, 831 S.E.2d at 757. At sentencing, the felony murder count was vacated by operation of law, and the trial

court merged the aggravated assault count into the malice murder count for sentencing purposes. Id. at 761 n.1. The trial court sentenced Petitioner to life in prison for malice murder and five consecutive years for possession of a knife during the commission of a felony. Id. Retained attorney Jay Boswell represented Petitioner at trial. (Doc. no. 11-9, p. 8.)

Assistant Public Defender Caryn Lobdell represented Petitioner post-conviction. (Id. at 1.) On December 4, 2017, Petitioner, through counsel, filed a motion for a new trial, which he amended on January 23, 2018. Jackson, 831 S.E.2d at 761 n.1. The trial court held a hearing on April 24, 2018 and denied the motion on December 6, 2018. Id.

On direct appeal, Petitioner raised multiple grounds of ineffective assistance of trial counsel and trial court error. (Doc. no. 11-2, p. 7.) The Georgia Supreme Court rejected Petitioner's arguments and affirmed the judgment of conviction. Jackson, 831 S.E.2d at 761. In its opinion, the Georgia Supreme Court summarized the factual background related to Petitioner's claims as follows:

> [O]n December 24, 2013, [Petitioner] stabbed Thomas multiple times with a steak knife while he was with Thomas in the yard of a home in Warren County. A neighbor who was across the street from the stabbing saw [Petitioner], who seemed to be on his knees, moving his arm in a stabbing motion toward the ground. The witness then saw [Petitioner] kick Thomas three or four times while Thomas was on the ground. The witness observed [Petitioner] throw something in the bushes and then return to kick Thomas again. [Petitioner] walked away from Thomas, leaving him dying in the yard. The neighbor called [Petitioner's] girlfriend, Eula Evans, and told her to come and get [Petitioner]. The neighbor then called 911, and she crossed the street, finding Thomas bleeding heavily in the yard.
> An officer who responded to the scene attempted to communicate with Thomas, who was still alive at the time, but Thomas was unable to speak. Thomas had suffered at least forty-seven sharp force injuries, including ten stab wounds to his head and neck and five stab wounds to his torso. Thomas died from the stab wounds to his neck and torso.
> Police found a black-handled steak knife with blood on it in the dirt

driveway outside of the house where the stabbing had taken place, and no weapons were found on Thomas. Police also discovered drops of blood leading away from the scene and along the route that [Petitioner] had walked after the stabbing. DNA testing later revealed that the blood drops leading away from the scene belonged to [Petitioner], and that two sets of blood profiles were present on the knife. The major blood profile on the sharp tip of the knife and the hilt of the knife where the blade joins the handle belonged to Thomas, and the only place on the knife where the major blood profile belonged to [Petitioner] was on the handle.

   Police saw [Petitioner] at the same hospital where Thomas had been taken after the stabbing, as [Petitioner] was there to be treated for a laceration to the side of his face, a small wound to his abdomen, and some abrasions to his head. [Petitioner] later claimed in an interview with police that Thomas had attacked and stabbed him, and that [Petitioner] took the knife away from Thomas before stabbing him two or three times. [Petitioner] also claimed in his statement that Thomas was still trying to fight him after [Petitioner] had stabbed Thomas to defend himself and had walked away from Thomas.

Id. at 758.

On November 17, 2020, Petitioner filed the instant federal petition asserting the following six grounds for relief:

> (1) The trial court committed error by referencing revenge in a jury instruction which stated that, for the homicide to be justified, the accuse must have acted under the influence of reasonable fear rather than in a spirit of revenge, and relatedly the trial court failed to clarify the charge when jurors questioned the reference to revenge;
>
> (2) Trial counsel failed to conduct an adequate investigation and met with Petitioner only twice prior to trial;
>
> (3) Trial counsel "failed to properly present a self defense,"
>
> (4) Trial counsel failed to object to the trial court's erroneous jury instruction concerning self defense;
>
> (5) Trial counsel failed to call his girlfriend to testify on his behalf; and
>
> (6) Trial counsel did not properly advise Petitioner as to the nature of the charges pending against him.

3

(Doc. no. 1.) Finding Grounds Two and Six to be unexhausted, the Court ordered Petitioner to either (1) dismiss the petition in its entirety so that he may present to the state habeas court his unexhausted claims; or (2) notify the Court of his preference to proceed in this Court only with respect to his exhausted claims. (Doc. no. 3.) On January 14, 2021, Petitioner informed the Court he wished to proceed only with respect to the exhausted claims in Grounds One, Three, Four, and Five. On the merits, Respondent argues Ground One fails to present a federal question and Grounds Three to Five fail for the reasons stated by the Georgia Supreme Court and the deference afforded to that state court decision under 28 U.S.C. § 2254(d). (See doc. no. 10-1.)

## II.   STANDARD OF REVIEW

Under § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim - -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has characterized § 2254(d) as "part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 562 U.S. 86,

103 (2011). Accordingly, § 2254(d) creates a "difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations omitted).

In Brown v. Payton, 544 U.S. 133, 141 (2005), the Supreme Court explained the difference between the "contrary to" and "unreasonable application" clauses in § 2254(d)(1) as follows:

> A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

Id. (internal citations omitted). Thus, under § 2254(d)(1), it is not enough to demonstrate that a state court's decision is wrong; "even clear error will not suffice." White v. Woodall, 572 U.S. 415, 419 (2014). Rather, the habeas petition must show the state court decision was "objectively unreasonable." Wiggins v. Smith, 539 U.S. 510, 520-21 (2003); see also Woods v. Donald, 575 U.S. 312, 316 (2015) (a petitioner must show the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."). A showing that the state court's determination was unreasonable is a substantially higher threshold than whether it was correct. Reed v. Sec'y, Fla. Dep't of Corr., 767 F.3d 1252, 1260-61 (11th Cir. 2014); Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1325 (11th Cir. 2013). In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 563 U.S. at 181.

Moreover, under AEDPA's highly deferential standard of review for state court factual determinations, a federal habeas court may only grant relief if a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, § 2254(e)(1) requires the Court "to presume the correctness of state courts' factual findings" unless the habeas petitioner rebuts that presumption "with clear and convincing evidence." Nejad v. Att'y Gen., State of Ga., 830 F.3d 1280, 1289 (11th Cir. 2016) (citing Schriro v. Landrigan, 550 U.S. 465, 473-74 (2007)); see also Reese v. Sec'y, Fla. Dep't of Corr., 675 F.3d 1277, 1287 (11th Cir. 2012) ("In a habeas proceeding, our review of findings of fact by the state court is even more deferential than under a clearly erroneous standard of review."). "The Supreme Court has not yet defined § 2254(d)(2)'s precise relationship to § 2254(e)(1). . . . Whatever that precise relationship may be, a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Tharpe v. Warden, 834 F.3d 1323, 1336 (11th Cir. 2016) (citing Wood v. Allen, 558 U.S. 290, 301 (2010)).

### III.  DISCUSSION

#### A.  Grounds One and Four Fail to State a Valid Basis for Federal Habeas Relief

Ground One alleges the trial court gave an incorrect jury charge on self-defense by explaining that, for the homicide to be justified, the accused must have acted under the influence of reasonable fear rather than in a spirit of revenge. Petitioner further contends the trial court failed to clarify the charge after the jury questioned its meaning.

A state court criminal judgment may be collaterally attacked in the federal courts only

if it violated federal law. Wilson v. Corcoran, 562 U.S. 1, 3 (2010). As the habeas statute explains, the federal writ may issue to a state petitioner only when that petitioner "is in custody in violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). "Because state courts are the ultimate expositors of state law, we are bound by state-court determinations on state-law questions. Put another way, [a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." Jones v. GDCP Warden, 815 F.3d 689, 722-23 (11th Cir. 2016) (internal citations and quotes omitted); see also Tuomi v. Sec'y, Fla. Dep't of Corr., -F.3d-, No. 17-14373, 2020 WL 6686696, at *5 n.9 (11th Cir. Nov. 13, 2020) (same, collecting cases). In sum, the federal habeas court does not sit as a "'super' state supreme court." Shaw v. Boney, 695 F.2d 528, 530 (11th Cir. 1983) (*per curiam*) (citations omitted). As an alleged error of state law forms no basis for federal habeas corpus relief, Ground One does not form a basis for relief in these proceedings.

"Where the claim is merely that a jury instruction was incorrect under state law, federal habeas relief is not available." Applewhite v. Sec'y, DOC, 373 F. App'x 969, 972 (11th Cir. 2010) (*per curiam*). However, a defective jury charge can raise an issue of constitutional dimensions "if it renders the entire trial fundamentally unfair." Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983) (*per curiam)*. Petitioner has not argued, let alone shown, any such fundamental unfairness, and Ground One thus fails to state a claim of constitutional significance.

Furthermore, the Court is bound by the Georgia Supreme Court's determination that the trial court's self-defense charge was a correct statement of law, and the trial court's

response to a juror question concerning this charge was sufficient. On direct appeal, Petitioner argued the self-defense charge's reference to "in the spirit of revenge" was incorrect because the General Assembly removed that reference from the statute prior to Petitioner's alleged offense conduct. Jackson, 831 S.E.2d at 758. As the Georgia Supreme Court determined:

> [D]espite the fact OCGA § 16-3-21 does not contain language indicating that a defendant must show that he or she did not act in the spirit of revenge in order to assert self-defense, when comparing the current language of OCGA § 16-3-21 with the previous statute that included the "spirit of revenge" language . . . "in essence the old law and the new law have the same standard as to justification of homicide." Brooks v. State, 227 Ga. 339, 342 (3), 180 S.E.2d 721 (1971). Therefore, the instruction at issue [that included the "spirit of revenge" language] is [still] a correct statement of the law.

Id. at 759 (quoting Pena v. State, 774 S.E.2d 652, 658 (Ga. 2015)). In addition, the Georgia Supreme Court found the "record supported the conclusion that the recharge *did* in fact clear up any confusion that the jurors may have had as indicated by the jury foreperson informing the court . . . the recharge actually given answered the jury's question." Id. at 760 (emphasis in original). These conclusions by the Georgia Supreme Court are binding on this Court and, notably, are also correct. For these reasons, Ground One does not afford Petitioner federal habeas corpus relief.

In Ground Four, Petitioner argues trial counsel provided ineffective assistance by failing to object to the trial court's jury instruction concerning self-defense. There can be no prejudice from failing to raise a meritless issue. United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992). Accordingly, Petitioner fails to demonstrate trial counsel was ineffective for failing to make such an objection, and this claim provides no basis for relief.

### B.      Federal Habeas Relief Is Not Warranted on Grounds Three and Five

Applying AEDPA deference to Petitioner's claims previously analyzed and rejected by the Georgia Supreme Court, federal habeas relief is not warranted.  See Wilson v. Sellers, 584 U.S.-, 138 S. Ct. 1188, 1192 (2018) (requiring federal habeas court to review reasons of merits-based decision by state court and defer to those reasons if they are reasonable).  As explained in detail above, the Court is guided by AEDPA's mandate that factual determinations made by a state court are presumptively correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  Tharpe, 834 F.3d at 1337.  Moreover, AEDPA requires the Court give deference to the state-court decision, and that deference must be "near its apex" when considering Strickland claims that turn on general, fact-driven standards.  Sexton v. Beaudreaux, 584 U.S.-, 138 S. Ct. 2555, 2560 (2018) (*per curiam*).

#### 1.      Under Strickland v. Washington, Petitioner Bears a Heavy Burden on Ineffective Assistance of Counsel Claims

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 688.  In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions."  Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001).  Strategic decisions are entitled to a "heavy measure of deference."  Strickland, 466 U.S. at 691.  Indeed, "strategic choices are

9

'virtually unchallengeable.'" Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998) (citing Strickland, 466 U.S. at 690 and Waters v. Thomas, 46 F.3d 1506, 1522 (11th Cir. 1995) (*en banc*)). To show that an attorney's choice of strategy is unreasonable, a petitioner must show that no competent counsel would have made such a choice. Strickland, 466 U.S. at 690; Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983) (*per curiam*) ("Even if in retrospect the strategy appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it." (citations omitted)).

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted). "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ." Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters, 46 F.3d at 1512).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013). Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would

have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

As the Eleventh Circuit has ruled, a petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted). Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different." Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).

The Strickland test also applies to claims of ineffective assistance of appellate counsel, see Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991), with the additional consideration that a criminal defendant has no "constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." Jones v. Barnes, 463 U.S. 745, 751 (1983); see also Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009) (explaining appellate counsel not required to raise every non-frivolous issue). Appellate counsel is not ineffective for failing to raise claims 'reasonably considered to be without merit.'" United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000) (citation omitted). Moreover, it is up to appellate counsel to winnow out weaker arguments, even if they may have merit, and select the most promising issues for review. Jones, 463 U.S. at 751-52; Philmore, 575 F.3d at 1264. Prejudice turns on

11

whether "the neglected claim would have a reasonable probability of success on appeal." Philmore, 575 F.3d at 1265 (citation omitted).

In the context of an ineffective assistance claim that was previously rejected by a state court, the petitioner bears the even heavier burden of "show[ing] that the [state courts] applied Strickland to the facts of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 699 (2002); see also Cave v. Sec'y for Dep't of Corr., 638 F.3d 739, 748 (11th Cir. 2011) (noting that, where the state court has previously adjudicated a claim on the merits, the petitioner "has the additional burden of demonstrating that the state court's application of this demanding standard was not merely wrong, but objectively unreasonable"). "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly." Bell, 535 U.S. at 699. "In short, an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Barwick v. Sec'y, Fla. Dep't of Corr., 794 F.3d 1239, 1245 (11th Cir. 2015) (internal quotations and citations omitted).

Moreover, because "[t]he standards created by Strickland and § 2254(d) are both highly deferential, . . . when the two apply in tandem, review is doubly so." Richter, 562 U.S. at 105 (quotation marks and citations omitted); see also Yarborough v. Gentry, 540 U.S. 1, 4 (2003) (review of attorney performance is "highly deferential-and doubly deferential when it is conducted through the lens of federal habeas"). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment . . . . [F]ederal courts are to afford both the state court and the defense attorney the benefit of the doubt." Woods v. Etherton, 578 U.S.-, 136 S. Ct. 1149, 1151 (U.S.

2016) (*per curiam*) (internal quotations and citations omitted). To obtain federal habeas relief, "[t]he state court decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. Put another way, "[t]he Strickland standard is a general one, so the range of reasonable applications is substantial." Richter, 562 U.S. at 105; see also Sexton v. Beaudreaux, 584 U.S.-, 138 S. Ct. 2555, 2560 (U.S. 2018) ("[B]ecause the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." (citation omitted)); Woods, 575 U.S. at 316 ("AEDPA's standard is intentionally difficult to meet.").

The purpose of the review is not to grade counsel's performance because, of course, every lawyer "could have done something more or different. . . . But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*). That is, Strickland requires application of a totality-of-the-circumstances standard because "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Khan v. United States, 928 F.3d 1264, 1273 (11th Cir.) (citation omitted), *cert. dismissed*, 140 S. Ct. 339 (U.S. Nov. 5, 2019). As recently emphasized by the Eleventh Circuit:

> [D]eferential review under Strickland does not ask whether counsel could possibly or ideally have been more effective. "The test for ineffectiveness is not whether counsel could have done more." We do not ask whether an attorney's representation "deviated from best practices or common custom," and we should resist the temptation to second-guess an attorney with the benefit of our

13

>hindsight. Rather, Strickland asks only "whether, in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance."

Jenkins v. Comm'r, Ala. Dep't of Corr., 963 F.3d 1248, 1269-70 (11th Cir. 2020) (internal citations omitted).

### 2. The Georgia Supreme Court's Application of Strickland to Petitioner's Ineffective Assistance Claims in Grounds Three and Five Was Not Objectively Unreasonable

In Grounds Three and Five, Petitioner argues trial counsel was ineffective (1) in his presentation of the self-defense argument because he failed to call Petitioner and his girlfriend, Eula Evans, to testify; and (2) in his failure to present evidence of the victim's reputation in the community, including the testimony of Ms. Evans that the victim used drugs, drank alcohol, and once threatened her at a card game in a manner suggesting he had a knife. The Georgia Supreme Court rejected these arguments, and its decision is worthy of deference. Jackson, 831 S.E.2d at 760-61.

#### a. Background

At the time of the hearing on Petitioner's motion for new trial, Mr. Boswell had fourteen years of experience as a trial lawyer and averaged six trials per year. (Doc. no. 11-9, p. 14.) When retained by Petitioner, Mr. Boswell reviewed all discovery provided by the prosecutor, interviewed Petitioner, Ms. Evans, and Petitioner's brother-in-law, and inspected the murder weapon and knives from the homes of Petitioner and the victim. (Id. at 15-17.) Mr. Boswell also consulted an expert who might have testified that Petitioner committed the offense "in a fit of rage" during a "momentary blackout," but Petitioner insisted he did not black out. (Id. at 17-18.) More problematically, Petitioner told Mr. Boswell he only stabbed the victim two

14

or three times, which was at odds with the physical evidence showing (1) the victim had been stabbed forty-seven times; and (2) the murder weapon was touched by only Petitioner and the victim.  (Id. at 18-19.)

After consultation with Mr. Boswell, Petitioner elected not to testify at trial, but evidence supporting his self-defense argument was still presented because a statement he made to police was played for the jury in which he claimed he defended himself from an attack by the victim.  (Id. at 22.)  Petitioner told the investigating officer he was defending himself from attack at the time of the murder and "claimed the victim was still swinging and kicking at him" after he stabbed him.  (Doc. no. 11-6, pp. 129-32.)

### b. Analysis

The Georgia Supreme Court carefully scrutinized these same arguments concerning Mr. Boswell's representation and found no ineffective assistance of counsel.  Jackson, 831 S.E.2d at 760-61.  With respect to the alleged failure to call Petitioner to testify, the Georgia Supreme Court found no ineffective assistance because (1) Petitioner made an informed decision not to testify at the conclusion of the State's case and after consultation with Mr. Boswell; and (2) Petitioner's decision not to testify was reasonable because his story of only stabbing the victim two or three times contradicted the undisputed physical evidence.  Id. at 761.

Concerning Mr. Boswell's decision not to call Ms. Evans as a witness, the Georgia Supreme Court credited Mr. Boswell's testimony that, after interviewing Petitioner and Mrs. Evans, it was apparent Ms. Evans had nothing valuable to contribute to the defense, including the self-defense argument.  Indeed, according to Mr. Boswell, Ms. Evans told him she did not

witness the altercation and merely met Petitioner after the altercation and took him to the hospital.  (Doc. no. 11-9, p. 21.)  Ms. Evans offered a differing take on the scope of her knowledge at a hearing on the motion for new trial, claiming she witnessed the altercation and a third party likely committed the crime, but she conceded she never informed the police about the third party.  (Id. at 42.)

Finally, the Georgia Supreme Court rejected the criticism that Mr. Boswell failed to call Ms. Jackson to testify about the victim's alleged poor character and prior threat to her. Citing Mr. Boswell's testimony, the state court found neither Petitioner nor Ms. Jackson ever mentioned anything pretrial to Mr. Boswell about the victim's reputation or character, and instead merely stated they knew him only as an acquaintance.  Jackson, 831 S.E.2d at 761.

The state court decision is thorough, detailed, and well-reasoned, and Petitioner presents nothing demonstrating legal or factual error that was "well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Woods, 136 S. Ct. at 1151.  The state court decision is well-grounded factually in the sworn testimony of trial counsel and gives due deference to trial counsel's strategic decisions of what evidence to present and what evidence to avoid.  In sum, the state court's decision to reject Grounds Three and Five was not an unreasonable application of Strickland or based on an unreasonable determination of the facts in light of the evidence presented.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Petitioner's § 2254 petition be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 10th day of September, 2021, at Augusta, Georgia.

*/s/ Brian K. Epps*
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA